UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| GREGORY W. BENNETT, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6: 14-163-DCR |
| ) | |
| V. ) | |
| ) | |
| CAROLYN W. COLVIN, Acting ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Gregory W. Bennett ("Bennett") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 10, 11] Bennett argues that the administrative law judge ("ALJ") assigned to his case erred by finding that he is not entitled to a period of disability, disability insurance benefits, or supplemental security income. [Record No. 10-1, pp. 5–8] The Commissioner asserts that the ALJ's decision is supported by substantial evidence and should be affirmed. [Record No. 11, pp. 3–7] For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief requested by Bennett.

**I.**

On August 20, 2011, Bennett filed applications for a period of disability and disability insurance benefits under Title II of the Social Security Act ("the Act"), and supplemental

- 1 -

security income under Title XVI of the Act. [*See* Record No. 7-1, Administrative Transcript, "Tr.," p. 10.] He alleges a disability beginning May 20, 2009. Bennett, along with attorney Ronald Cox and vocational expert ("VE") JoAnn Bullard, appeared before ALJ Christopher Van Dyck on March 28, 2013, for an administrative hearing. [Tr., pp. 23–43] On April 8, 2013, the ALJ found that Bennett was not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Act. [Tr., pp. 10–18] Bennett filed an appeal with the Social Security Administration's Appeals Council. However, this appeal was denied on June 5, 2014. [Tr., pp. 1–4]

Bennett was 45 years old when his alleged disability began on May 20, 2009, and 49 years old at the time of the ALJ's decision. He has a high school education and has previously worked as a semi-skilled material handler. [Tr., p. 16] Bennett asserts that he is unable to work due to back injuries, depression, and a nervous condition. [Tr., p. 238] After considering the testimony presented at the administrative hearing and reviewing the record, the ALJ concluded that Bennett suffers from the severe impairment of degenerative disc disease of the cervical and lumbar spine. [Tr., p. 13–14] Despite this impairment, the ALJ determined that the claimant maintained the residual functional capacity ("RFC") to perform medium work, subject to the following limitations: "[Bennett] can perform no more than frequent climbing of ropes, ladders and scaffolds. The claimant can perform no more than frequent stooping, crouching or crawling, and no more than occasional kneeling." [Tr., p. 14]

After considering Bennett's age, education, work experience, and RFC, the ALJ concluded that there were a significant number of jobs in the national economy that he could perform, including hand packager, industrial cleaner, and store laborer. [Tr., p. 17] Thus, the ALJ concluded that Bennett was not disabled from May 20, 2009, through the date of the administrative decision. [Tr., p. 18]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity,' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d),

416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). In other words, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III.

Bennett asserts that ALJ Van Dyck erred in two ways. First, he argues that the ALJ erred in considering the opinion of consultative examiner Dr. Paul von Herrmann. Second, he contends that the question posed to the vocational expert did not include all of his limitations.

### A. Weight Assigned to Consultative Examiner

Bennett asserts that the ALJ's opinion is not supported by substantial evidence. Specifically, he argues that the ALJ failed to properly weigh the opinion of one time consultative examiner Dr. Paul von Herrmann, M.D. Bennett contends that by finding he had a medium lifting restriction, the ALJ failed to properly weigh Dr. von Herrmann's opinion that he could "lift and carry approximately 10 lbs. without restriction." [Record No. 10-1, pp. 5–6, 8; Tr., p. 320] The ALJ agreed with the majority of Dr. von Herrmann's report and objective findings. However, he assigned "very little weight" to the lifting and carrying restriction because it was not supported by Dr. von Herrmann's objective findings and was inconsistent with the remaining evidence in the record. [Tr., p. 16]

The ALJ is responsible for weighing the record as a whole and determining the claimant's RFC. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010); 20 C.F.R. §§ 404.1546(c), 416.946(c). When reviewing medical evidence, the weight the ALJ gives to a consultative opinion depends on a variety of factors, including: whether a source actually treated a claimant, the supportability of the source's opinion, the consistency of the opinion when compared with the record as a whole, and other factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). Under the treating physician rule, opinions of treating physicians are entitled to great deference. The rule applies if a physician has dealt with a claimant over a long period of time and, as a result, has a deep insight into the claimant's medical condition. *See Coldiron*, 391 F. App'x at 442; *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The ALJ's determination that Dr. von Herrmann's lifting restriction was entitled to very little weight is supported by the objective medical evidence. The treating physician rule is inapplicable here because Dr. von Herrmann did not have a sufficient relationship with the claimant to be classified as a treating source.[1] *See Coldiron*, 391 F. App'x at 442 (treating physician rule does not apply to consultative examiners). As noted by the ALJ, Dr. von Herrmann's opinion was not supported by his own objective findings. Dr. von Herrmann found that Bennett had mild tenderness in his lower back. However, he also found that Bennett had no limitations in "[r]eaching, handling, fingering, feeling, pushing and pulling." Additionally, he concluded that Bennett had 5+/5 strength throughout his body, including

---

1   Dr. von Herrmann saw Bennett on one occasion for a consultative examination. [Tr., pp. 317–22]

5+/5 strength in his hands. [Tr., pp. 15, 319–20] These conclusions contradict his opinion that Bennett was restricted to lifting and carrying ten pounds.

Further, Bennett's own testimony casts doubt on Dr. von Herrmann's opinion. As noted by the ALJ, Bennett lacked credibility as a result of several inconsistencies. [Tr., pp. 15–16] Bennett filled out a functional report regarding his physical and mental limitations on September 13, 2011, in which he stated that he was unable to do more than light household chores. [Tr., pp. 223–31] Relating to his ability to lift and carry, Bennett stated that he could lift only up to five pounds. [Tr., p. 229] However, Bennett testified that he had been engaging in "odd jobs" including home improvement projects (putting up molding and walls) requiring the use of tools (hammers and nails).[2]

The ALJ also assigned "great weight" to state agency physician, Dr. Timothy Gregg's opinion. [Tr., p. 16] Dr. Gregg reviewed the record and determined that Dr. von Herrmann's opinion was more restrictive than the medical evidence required and was based only on a snapshot of Bennett's functioning. [Tr., p. 102] He concluded that Bennett had the physical capability to occasionally lift and carry fifty pounds and to frequently lift and carry twenty-five pounds. [Tr., p. 101] In light of the minimal medical evidence supporting the alleged back problems and Bennett's own testimony, the ALJ agreed with Dr. Gregg's conclusion that a reduction to medium exertion with necessary postural precautions adequately reflected

---

2   The ALJ noted additional inconsistencies in Bennett's testimony. Specifically, Bennett told Dr. Timothy Baggs that he had stopped working because he "wasn't making up [sic] to afford the ride." [Tr., p. 324] However, at the administrative hearing, Bennett stated that he had stopped working because the job was too strenuous. [Tr., p. 28] Further, although Bennett stated in his functional report that he was unable to do more than light household chores, he told Dr. Baggs that in a typical day he would "walk to a friend's house and watch TV. If my back is not bothering me, then I play horseshoes." [Tr., pp. 223–31, 327]

the claimant's limitations as demonstrated by the record. [Tr., p. 16] Thus, Dr. von Herrmann's opinion was not supported by the medical evidence because his findings were contradicted by his own examination, Bennett's own testimony, and Dr. Gregg's review. As a result, the ALJ's determination on this issue is supported by substantial evidence.

### B. Hypothetical Question

Bennett also asserts that the hypothetical question upon which the ALJ relied was defective because it failed to accurately depict the restrictions assessed by Dr. Timothy Baggs, Psy. D., whose opinions the ALJ chose to adopt regarding Bennett's mental limitations. [Record No. 10-1, pp. 6–8] The question asked to the vocational expert incorporated the ALJ's RFC determination. Specifically, the ALJ described a hypothetical individual "of the same age, education, work background as [Bennett]. This individual would be limited to medium work, RFC, with no more than frequent climbing of ladders, ropes, and scaffolds, no more than frequent stooping, crouching, or crawling, and no more than occasional kneeling." [Tr., p. 41] Relying on the testimony of VE Bullard, the ALJ found that although Bennett's limitations precluded him from returning to his past work, there existed a significant number of jobs in the national economy that the claimant could perform. [Tr., pp. 16–17, 41–42]

"[F]or a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Therefore, the hypothetical question does not need to contain

every one of the claimant's conditions. However, "the ALJ must include in the question an accurate calculation of the claimant's residual functional capacity – i.e., a description of what the claimant can and cannot do." *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 453 (6th Cir. 2007) (quotations omitted).

In determining Bennett's severe impairments, the ALJ stated that he assigned "great weight" to Dr. Timothy Baggs' findings because his conclusions were "wholly supported by the lack of mental health treatment from the claimant, [the] objective evaluation and findings," and Dr. Baggs' knowledge of agency rules and medical criteria for evaluating functional limitations. [Tr., p. 14] In these remarks, the ALJ seems to completely accept Dr. Baggs' findings. Along with other conclusions, Dr. Baggs stated that it was his opinion that Bennett "had the ability to understand and remember simple instructions." [Tr., p. 330] However, the ALJ did not include a limitation of "simple instructions" in the hypothetical question posed to the vocational expert.[3] [Tr., pp. 14, 41] As a result, Bennett asserts that the hypothetical question cannot constitute substantial evidence that jobs exist in the national economy that he could perform. [Record No. 10-1, pp. 7–8]

The Commissioner argues that, although the ALJ erred in not including a "simple instructions" limitation, the error was harmless. [Record No. 11, pp. 6–7] In answering the ALJ's hypothetical, the vocational expert determined that there are "medium, unskilled occupations" – including hand packager, industrial cleaner, and storage laborer – that exist in significant numbers in the national economy that Bennett could perform. [Tr., p. 42] The

---

3    Dr. Baggs' "simple instructions" limitation was not included in Bennett's RFC either. However, the claimant does not argue that this amounted to reversible error.

Commissioner asserts that any error resulting from the failure to include a limitation of "simple instructions" was harmless because all of the jobs identified by the vocational expert were "unskilled occupations," which accounted for Dr. Baggs' limitation. [Record No. 11, p. 7] Thus, the Commissioner contends that the claimant has the ability to perform the jobs identified by the vocational expert regardless of whether the RFC or the hypothetical question included Dr. Baggs' limitation. [Record No. 11, p. 7]

The Sixth Circuit has recognized that "[i]t is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). However, decisions of administrative agencies are generally reviewed for harmless error. *See Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). Accordingly, if an agency has failed to adhere to its own procedures, the reviewing court "will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) (quotations omitted).

The Sixth Circuit has remanded a similar case for failure to properly include a claimant's limitations in a hypothetical question. In *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 514–17 (6th Cir. 2010), the hypothetical question relied upon by the ALJ failed to include limitations assessed by a state psychologist whose opinion the ALJ accepted. Specifically, the ALJ failed to include limitations in pace, speed, and concentration, which were all required to perform the jobs identified by the vocational expert

and adopted by the ALJ. *Id.* at 516–17. The Sixth Circuit determined that "[b]ecause the controlling hypothetical inadequately described Ealy's limitations, the expert's conclusion that Ealy could work as an assembler, inspector, packer, or production worker does not serve as substantial evidence that Ealy could perform this work." *Id.* at 517. The reasoning in *Ealy* has been interpreted by at least one district court to mean that harmless error may not be found in these circumstances. *See Osborne v. Comm'r of Soc. Sec. Admin*, No. 1: 12-CV-01904, 2013 WL 5221107, at *12 (N.D. Ohio Sept. 17, 2013) (noting that "because the burden shifts to the Commissioner at Step Five," the ALJ's failure to include a restriction to simple, routine and repetitive tasks included in the RFC "was not harmless and the ALJ's Step Five determination cannot be said to be supported by substantial evidence").

In *Irvin v. Colvin*, Civil No. 12-169-GFVT, 2013 WL 5477461, at *9–12 (E.D. Ky. Sept. 30, 2013), the ALJ accepted the limitations assessed by state agency physicians, including limiting the claimant to only frequent reaching, handling, or fingering. *Id.* at *4. But the claimant's RFC and the hypothetical question posed to the vocational expert failed to include these limitations. Regardless, the district court determined that the ALJ's failure to include the limitations constituted harmless error because, unlike *Ealy*, each of the occupations identified by the vocational expert "could not only be performed by someone with the limitations of the hypothetical, but also someone with the exact limitations assessed to Irvin by the agency physicians." *Id.* at *10. On appeal, the Sixth Circuit reversed the district court's ruling. *Irvin v. Soc. Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014). The Court concluded that five of the listed occupations could be performed by an individual with the claimant's limitations. Nevertheless, the final occupation identified (oil-filter inspector)

did not correspond to an occupation in the Dictionary of Occupational Titles making it "unclear whether the oil-inspector position requires only frequent, rather than constant, reaching, handling, or fingering." *Id.* As a result, it was "unclear whether the Commissioner would have met his step-five burden of demonstrating that Irvin could perform this job if all [the state agency physicians'] restrictions had been included in the hypothetical question." *Id.* Additionally, the record did not include sufficient evidence to find that the remaining occupations identified by the vocational expert existed in significant numbers in the national economy if oil-filter inspector was excluded. *Id.*

Here, as stated earlier, ALJ Van Dyck failed to include a limitation for "simple instructions" in the hypothetical question posed to the vocational expert. The vocational expert concluded that Bennett had the ability to perform "medium, unskilled occupations," including hand packager, industrial cleaner, and storage laborer. [Tr., p. 42] In denying the Commissioner's harmless error argument in *Irvin*, the Sixth Circuit relied on the facts that it was unclear whether one of the occupations identified by the vocational expert accounted for the omitted limitations and whether the remaining occupations existed in significant numbers in the national economy. 573 F. App'x at 502. The Court did not conclude that *Ealy* made harmless error inapplicable in this context.

The issues requiring remand in *Irvin* are not presented in this case. The ability to hear and understand "simple instructions" is all that is required to do unskilled work. *See* SSR 96-9p, 1996 WL 374185, at *8 (July 2, 1996) (noting that "the ability to hear and understand simple oral instructions" is sufficient to perform unskilled work). And each occupation listed by the vocational expert has a "specific vocational preparation" of 2, classifying them as

unskilled occupations. Thus, even including the "simple instructions" limitation, there is substantial evidence that Bennett has the ability to perform each occupation identified. *See* United States Dep't of labor, Dictionary of Occupational Titles §§ 920.587-018 (1991 WL 687916); 381.687-018 (1991 WL 673258); 922.687-058 (1991 WL 688132) (all requiring the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions"). And unlike *Irvin*, there is no question that these occupations exist in a significant number in the national economy. VE Bullard testified that 167,700 hand packager, 1,089,000 industrial cleaner, and 96,600 storage laborer jobs exist in the national economy. [Tr., p. 42] Therefore, the Commissioner has satisfied her burden at step five of the sequential analysis.

This Court is unable to ascertain any harm suffered by Bennett in connection with the hypothetical question. Even with the failure to include the "simple instructions" limitation, the procedures employed by the ALJ demonstrate that sufficient jobs exist in the national economy to account for all of Bennett's limitations. As a result, harmless error occurred because Bennett has not shown "prejudice[] on the merits or [deprivation] of substantial rights because of the agency's procedural lapse[]." *Rabbers*, 582 F.3d at 654 (quotations omitted).

## IV.

The ALJ did not err in considering the opinion of consultative examiner Dr. Paul von Herrmann. Further, the ALJ's failure to include a limitation of "simple instructions" in the hypothetical question posed to VE Bullard was harmless error. Having reviewed the record

of this proceeding, the Court concludes that substantial evidence supports the final decision of the defendant. Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Gregory W. Bennett's motion for summary judgment [Record No. 10] is **DENIED**.

2. Defendant Carolyn W. Colvin's motion for summary judgment [Record No. 11] is **GRANTED**.

3. The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 11th day of February, 2015.



Signed By:
*Danny C. Reeves* DCR
United States District Judge